# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# FAYETTEVILLE DIVISION

**LISA ANN GARCIA**                                                                 **PLAINTIFF**

**V.**                            **CASE NO. 5:18-CV-5112**

**MCKEE FOODS CORPORATION**                                     **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court is a Motion for Summary Judgment (Doc. 35) filed by Defendant McKee Foods Corporation ("McKee Foods"). Now that the Motion has been fully briefed,[1] it is **GRANTED IN PART AND DENIED IN PART** for the reasons explained below.

## I. BACKGROUND

The following facts are undisputed. Plaintiff Lisa Ann Garcia began working for McKee Foods in its processing plant in Gentry, Arkansas, beginning in August of 2005. She started off as a packaging technician and held a few other positions during her tenure at the company until about May of 2013, when she went back to the job of packaging technician. She was terminated on June 30, 2016, which means she worked for the company for approximately eleven years.

Beginning in 2010, Ms. Garcia began taking employer-approved leave under the Family and Medical Leave Act ("FMLA" or "Act"). She applied for and received approval from McKee Foods to take continuous leave for certain periods of time and intermittent leave for other periods of time. Ms. Garcia sometimes needed FMLA leave to deal with

---

[1] Plaintiff Lisa Ann Garcia filed a Response in Opposition to the Motion (Doc. 45), and McKee Foods filed a Reply (Doc. 46).

1

her own serious health conditions, and other times she needed leave to care for her husband's serious health conditions.

The Complaint focuses on a period of intermittent FMLA leave that Ms. Garcia received in order to care for her husband's medical needs. Her leave request was approved by McKee Foods and covered a year-long time frame between December 18, 2015, and December 18, 2016. Ms. Garcia initially made this leave request in January of 2016, and McKee Foods approved it to start retroactively on December 18, 2015, and extend through June 18, 2016. When June of 2016 rolled around, Ms. Garcia submitted a leave-extension request, citing the same justifications for leave—the need to care for her sick husband. The company granted the request, which pre-authorized Ms. Garcia to take FMLA leave to care for her husband on an intermittent, as-needed basis through December 18, 2016.

The FMLA permits employees to take up to twelve weeks of approved leave during any twelve-month period. 29 U.S.C. § 2612(a)(1). Since Ms. Garcia's leave was to be taken intermittently, as opposed to continuously, McKee Foods required that she give notice that she was missing work for FMLA-approved reasons by making two phone calls: first, to the shift line, so that the shift supervisor would be notified of the absence; and second to an FMLA hotline. Ms. Garcia was required to make these two calls "on the day of [her] absence" to make sure that the FMLA leave she was taking would "be coded as such." (Doc. 35-9, p. 2). Further, the company required that when she missed more than seven calendar days of work in a row, she needed to "have a doctor's note to cover the time missed." *Id.*

Ms. Garcia typically worked the first shift from Monday to Friday each week. However, the company's workweek actually runs from Saturday evening through Friday evening, with the factory closed during the day on Saturday. On occasion, the company schedules certain shifts to work on Sundays, depending on the company's business needs. According to the affidavit of Cindy Weathers, Ms. Garcia's supervisor, "[t]he decision whether McKee Foods employees will need to work on Sunday is made on the preceding Friday, typically sometime after noon." (Doc. 46-2, p. 2). Employees can find out whether they are scheduled to work on a Sunday by checking a schedule posted Friday afternoon, asking a supervisor or co-worker, or calling an automated, 24-hour telephone line. It is the employee's responsibility to find out whether a Sunday shift has been scheduled, and Ms. Garcia admits she had previously used the automated call-in line to check to see if she was scheduled to work on a Sunday.

Ms. Garcia's husband had been suffering from complications related to diabetes, so she took FMLA leave to care for him from Monday, June 14, 2016, to Friday, June 17, 2016. She made the two required phone calls to the shift line and the FMLA hotline each day so that her absences would be coded as FMLA leave. She did not, however, call the 24-hour shift-schedule line on the afternoon of Friday, June 17, to determine whether her shift was scheduled to work on Sunday, June 19. She therefore did not go to work on Sunday. Instead, she showed up to work on Monday, June 20, with a note from Dr. Dan Springer of the Community Physicians Group in Siloam Springs, Arkansas, dated Friday, June 17. *See* Doc. 35-16. The note stated: "Lisa Nelsen Garcia is currently under my medical care. Please excuse Lisa for one week from work for caring for a family member. If you require additional information please contact our office." *Id.* She handed this note

3

to McKee Foods's Employee Health Services department when she returned to work on Monday the 20th.

Under McKee Foods's attendance policy, points are assessed against employees for being tardy or for failing to report to work. A full day's absence is assessed 1 point; a partial day's absence is assessed ½ point; a late call plus a full day's absence is assessed 2 points; and a no-call, no-show is assessed 4 points. (Doc. 35-6, p. 3). The point totals are evaluated over a rolling twelve-month period. Per the attendance policy, FMLA absences are not assessed any points, and as of Friday, June 17, 2016, when Ms. Garcia was out of work on approved FMLA leave, her point total was 10.5. After she missed her shift on Sunday, June 19, McKee Foods assessed her another 4 points for being a no-call, no-show, which put her point total over the 11-point limit that triggered suspension from work with the possibility of termination. No one from McKee Foods attempted to contact Ms. Garcia before June 19 to let her know that her shift was scheduled to work, even though she had been on FMLA leave the entire previous week, including the Friday afternoon when the company made the decision to schedule her shift to work on Sunday.

Ms. Garcia did not discover that she had missed the Sunday shift until after she came to work on Monday. The Human Resources Business Partner for McKee Foods, Fred Rosborough, presented her with a suspension notice and, on June 29, 2016, conducted a suspension interview with her. According to Mr. Rosborough's notes of the suspension interview, he asked her if she knew why she was suspended, and she responded that she understood it was because she had missed the Sunday shift and failed to call in while she was on FMLA leave. (Doc. 35-18). He then asked her whether "all the attendance [points]" that had been assessed against her were "because of [her]

4

husband," and she responded that "[m]ost of them [were] plus [her] FMLA leave had ran out." *Id.* She also stated that she was unable to attend a suspension committee meeting the following day because she did not have a working car and "d[id] not have a way to get [to the meeting]." *Id.*

The suspension committee met on June 30, 2016, to discuss Ms. Garcia's case. The committee recommended terminating her employment as of that day. She had previously been suspended in 2014 for attendance violations, but she had not been fired at that time. McKee Foods maintains that during the suspension committee meeting on June 30, Ms. Garcia's FMLA leave was never discussed and did not factor into the termination decision. The company now requests summary judgment on both of Ms. Garcia's FMLA claims. Ms. Garcia asks that the Court preserve the claims for trial. In the alternative, the company asks the Court to find that if any claims remain for trial, Ms. Garcia's damages award should be limited. The Court will address all of these arguments below.

## II. LEGAL STANDARD

The standard for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c);

5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, in order for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III. DISCUSSION

Ms. Garcia asserts two FMLA-based causes of action. The first is an FMLA entitlement claim, which is described in Section 2615(a)(1) of the Act. This provision makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). An entitlement claim is stated "where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). To prove an entitlement claim, a plaintiff must show: (1) "she was eligible for FMLA leave"; (2) the defendant "was on notice of her need for FMLA leave"; and (3) the defendant "denied her benefits to which

she was entitled under the FMLA." *Hasenwinkel v. Mosaic*, 809 F.3d 427, 432 (8th Cir. 2015).

Ms. Garcia's second claim is for FMLA discrimination. Section 2615(a)(2) of the Act makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA. 29 U.S.C. § 2615(a)(2). An FMLA discrimination claim "arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Pulczinski*, 691 F.3d at 1006.

### A. FMLA Entitlement Claim

After reviewing the record and the parties' briefing, the Court finds that Ms. Garcia's FMLA-entitlement claim should go to trial. Ms. Garcia argues that McKee Foods placed an improper burden on the exercise of her FMLA rights by requiring her to make a phone call while she was on FMLA leave to determine whether the company had scheduled her to work on a Sunday. She agrees the law permits the company to require her to call in and report her FMLA-covered absences each day. However, she contends that it goes a step too far to require her to call a third number on a day when she is on leave, when the purpose of the call is to find out whether the company scheduled her to work on a Sunday. She maintains that such a requirement violates the law and interferes with her rights under the FMLA because it requires her to perform work while on protected leave. *See Massey-Diez v. Univ. of Iowa Cmty. Med. Servs.*, 826 F.3d 1149, 1158–59 (8th Cir. 2016) (recognizing that it would not be illegal to require an employee to answer "nondisruptive communications such as short phone calls" from the employer, but it might be illegal to require the employee "to complete work-related tasks or produce work

product"); *Simmons v. Indian Rivers Mental Health Ctr.*, 652 F. App'x 809, 818 (11th Cir. 2016) ("An employer violates the FMLA by requiring an employee to perform work during FMLA leave.").

Where, as here, an employee is approved to take intermittent FMLA leave, her employer will not likely have advance notice of when the leave will occur. The employer, therefore, may require the employee to call in and report when she plans to exercise her rights under the FMLA and take off work. The Eighth Circuit has held that "an employer may terminate an employee on FMLA leave if she fails to comply with the employer's call-in requirement." *Thompson v. CenturyTel of Cent. Ark., LLC*, 402 F. App'x 114, 118 (8th Cir. 2010) (citing *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008)). Consequently, "[e]mployers who enforce such policies by firing employees on FMLA leave for noncompliance do not violate the FMLA." *Bacon*, 550 F.3d at 715.

The parties agree that McKee Foods was legally permitted to require Ms. Garcia to call in to two separate phone numbers to notify the company that she was taking FMLA leave; and, in fact, Ms. Garcia complied with the company's requirement and called both the shift line and the FMLA hotline every day, Monday through Friday from June 13 to 17, to report her absences. It remains an open question, however, whether McKee Foods imposed an impermissible work requirement on Ms. Garcia by expecting her to make another call on Friday the 17th, when she was out on pre-approved FMLA leave, to determine whether she had been scheduled for a weekend shift that had been announced that very afternoon. Summary judgment cannot be granted in McKee Foods's favor on this issue, as it has failed to meet its burden under Rule 56. Genuine, material questions of fact remain as to whether this third call constitutes "work" in violation of the Act.

## B. FMLA Discrimination Claim

Ms. Garcia's second claim is for FMLA discrimination. She alleges that the real reason McKee Foods terminated her was because she had been taking too much leave— at least in the company's eyes—under the FMLA. She has no direct evidence for this contention, so it must be considered under the traditional *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)).

Under *McDonnell Douglas*, Ms. Garcia must first "show that she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action." *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008) (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002)). If she successfully makes out a *prima facie* case, the burden then shifts to her employer to "articulate a legitimate, nondiscriminatory reason for its challenged actions." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). "The employee may then demonstrate that the proffered reason is pretextual, showing that 'the employer's proffered explanation is unworthy of credence' or 'persuading the court that a prohibited reason more likely motivated the employer.'" *Hudson v. Tyson Fresh Meats, Inc.*, 787 F.3d 861, 867 (8th Cir. 2015) (quoting *Stallings*, 447 F.3d at 1050).

Here, the Court finds that Ms. Garcia has established a prima facia case of discrimination. She exercised her rights under the FMLA by applying for and taking FMLA leave during both continuous and intermittent time periods from 2010 to 2016. She also

established sufficient facts to show that the amount of FMLA leave she took increased dramatically in 2015 and 2016, as compared to all the previous years.[2] McKee Foods's attendance report (Doc. 35-14) verifies this. Finally, Ms. Garcia contends that at least some of the attendance points her employer assessed against her over a six-year period were for FMLA-qualifying events, which violated both McKee Foods's own attendance policy and the Act itself.[3]

In response, the company argues that it fired Ms. Garcia for a legitimate, non-discriminatory reason—missing the Sunday shift due to failing to call in and accumulating too many attendance points. It also observes that it approved Ms. Garcia for FMLA leave on and off for more than six years prior to her discharge, which would tend to show the company's good will toward Ms. Garcia and its willingness to comply with the law. Finally, McKee Foods contends that Ms. Garcia must cite to a comparator to show she has been discriminated against and cannot simply use her own attendance record to establish a case of discrimination. However, the company cites to no case law to support this argument, though.

Now that McKee Foods has offered a nondiscriminatory reason for its termination decision, the burden shifts to Ms. Garcia to show that the company's reasons for firing her were pretextual. First, she observes that the company's managers somehow failed to consider that she was out on approved FMLA leave on the Friday before her missed

---

[2] For example, from 2010 to 2014, Ms. Garcia took a total of 28 days of FMLA leave. But from 2015 until the end of the first half of 2016, she took a total of 57 days of FMLA leave. During the period of approved FMLA leave that began on December 18, 2015, she had already taken a total of 14 days off—and there were still approximately six months to go in the leave period.

[3] *See* Doc. 35-8, Attendance Infractions.

Sunday shift. They also failed to consider that she called in every day that week to two telephone lines to confirm her absences, and the Sunday shift that she missed was only posted sometime in the afternoon on Friday, a day she was on FMLA leave. Next, the company apparently ignored the fact that she presented a doctor's note the Monday morning she returned to work after the missed shift on Sunday. Mr. Rosborough, who conducted Ms. Garcia's suspension interview, claims that she did not "tell [him] that she should have been considered to be on FMLA leave on June 19, 2016" or "request that her June 19 absence be coded as FMLA leave after the fact," (Doc. 35-17, p. 2). But the law is clear that "the employer's duties [under the FMLA] are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave," *Browning v. Liberty Mut. Ins. Co.,* 178 F.3d 1043, 1049 (8th Cir.1999), *cert. denied*, 528 U.S. 1050 (1999).

Finally, the company argues—incredibly—that "[t]he Suspension Committee . . . decided to terminate Garcia's employment without ever knowing that Garcia claimed to have been out for an FMLA-qualified reason on June 19." (Doc. 36, p. 17). It is undisputed that the company was on notice that Ms. Garcia had been approved for intermittent FMLA leave through the end of 2016, and Mr. Rosborough's notes from the suspension interview (Doc. 35-18) confirm that Ms. Garcia told him she had been off work for FMLA leave just before the shift she missed and had turned in a doctor's note the day she returned to work concerning her husband's medical condition. The Court finds that Ms. Garcia has presented sufficient evidence to create a genuine, material issue of fact that her employer's stated nondiscriminatory reasons for firing her were pretextual. Accordingly, Defendant's motion as to FMLA discrimination is denied.

## C. Damages

McKee Foods's final argument is that if any of Ms. Garcia's claims survive for trial, her recovery should be significantly limited. First, the company invokes the after-acquired evidence doctrine, explaining that two days after Ms. Garcia was fired, she was arrested and jailed for a period of time. McKee Foods contends it would have discharged Ms. Garcia eventually for unexcused absences because she would have certainly missed work due to being in jail. In support of its argument, McKee Foods cites to *Smith v. AS America, Inc.*, a Western District of Missouri case in which the district court limited a plaintiff's damages after his employer pointed out he was arrested and jailed following his termination. 85 F. Supp. 3d 1046, 1057 (W.D. Mo. 2015). Ultimately, the Court of Appeals vacated the district court's decision as to the employer's after-acquired evidence defense and the court's limitation on damages. *See* 829 F.3d 616, 627 (8th Cir. 2016). Furthermore, the Court finds that McKee Foods has failed to meet its burden of proof, as the facts supporting the company's argument appear to be speculative. Summary judgment will therefore be denied as to this affirmative defense.

Next, McKee Foods contends that compensatory damages for pain, suffering, embarrassment, and other emotional distress are not available under the FMLA, so Ms. Garcia should be prohibited from attempting to claim such damages at trial. The Court agrees with McKee Foods that emotional damages are unavailable in an FMLA action. *See Rodgers v. City of Des Moines*, 435 F.3d 904, 908–909 (8th Cir. 2006).

Lastly, McKee Foods argues that Ms. Garcia should not be entitled to an award of liquidated damages because the termination decision was made in good faith. The Court

finds that the company has failed to meet its burden of proof as to this argument, and the issue of liquidated damages will be preserved for later disposition.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant McKee Foods's Motion for Summary Judgment (Doc. 35) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** as to McKee Foods's argument that Plaintiff is not entitled to damages for emotional distress under the FMLA, and the Motion is **DENIED** as to all other arguments.

**IT IS SO ORDERED** on this 25th day of November, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE